IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VICTORIA ALBERT,

        Plaintiff,

vs.                                                    No. Civ. 01-0266 RLP/LCS

SMITH'S FOOD CENTERS, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment, seeking dismissal of Plaintiff's claims for violation of the New Mexico Human Rights Act, NMSA 1978, §28-1-1 et. seq. (Motion, Exhibits and All Briefing: Docket Nos. 38, 99, 41, 48, 54 & 56). Defendant also seeks summary judgment with regard to the defense of mitigation of damages. (Id.).

## Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics Intl., Inc. v. First Affiliated Sec., Inc., 912 F. 2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F. 2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Kaul v. Stephan, 83 F. 3d 1208, 1212 (10th Cir. 1996) (citation omitted). The

non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. Bacchus Indus., Inc., 939 F. 2d at 891.

**Claim for Relief under the New Mexico Human Rights Act**

**Uncontroverted Facts**

Plaintiff is a former employee of Defendant. She has asthma which is aggravated by exposure to certain substances, including many to which she was exposed at work. Although Plaintiff contests the materiality of the following facts, their accuracy is undisputed:

1. Beginning in January 1999, Plaintiff felt that her asthma was getting worse. She began checking Smith's on-line job posting system on an almost daily basis to try to find a position that would be better for her asthma. The on-line system posts job openings at all Smith's stores in New Mexico and for part of Texas.

2. Plaintiff understood that she needed to use the on-line system to locate and apply for a vacant position. Using the system, she had applied for a bookkeeper position in 1998 and later applied for a scanner coordinator position in February 1999.

3. After being turned down for the scanner position, Plaintiff continued to look on-line for a suitable position and was not able to find such a position. On August 29, 1999, Plaintiff had an asthma attack and left work. The next day, Plaintiff effectively went on a medical leave of absence that lasted until October 19, 1999.

4. Although the parties do not agree as to the title of Plaintiff's job classification at the time she went on medical leave, whether it was a checker/cashier or front end manager, it is undisputed that she could not return to her prior job.

5. Plaintiff returned to work on October 18, 1999, with a note from a medical care

provider which she claims prohibited her from working as a checker because of her asthma. In response, Smith's temporarily placed Plaintiff in a customer service booth position.

6.      A few days before she returned to work, Plaintiff asked Smith's personnel director for New Mexico whether he knew of any scanner or receiver openings and he told her that he did not. He suggested that Plaintiff contact the person in charge of hiring for scanning positions. Plaintiff learned that there were no scanner or receiver openings. She resumed her daily on-line search for a position.

7.      Plaintiff worked through November 5, 1999, in the customer service booth. She claims that midway through that week her store director informed her that she would not be scheduled for any more hours after that week ended. At that point, Plaintiff had not had any success in locating an alternative position.

8.      According to Plaintiff there were only two positions in Smith's stores in which she could not work because of her asthma: checker and customer service manager. Plaintiff testified that she could have been assigned to any position in the store, including a stocking position. However, Plaintiff only inquired about scanner and receiver openings. After November 5, 1999, Plaintiff did not inquire about or attempt to apply for any openings at Store 439 or any other Smith's store.

The Defendant asserts, and Plaintiff denies, that there were no job openings available at this time at Plaintiff's assigned store. The portion of her deposition cited to by the parties on this point states as follows:

> Q:      You said the last time you checked (the on-line posting of available jobs). Do you remember when that was?
> A:      It was November of '99, I believe.

> Q: And why did you check it then?
> A: Actually at that time I had been checking it almost daily just to see if anything was open.
>
> * * *
>
> Q: Why?
> A: Checking was not working out. . . .
>
> * * *
>
> Q: Did you apply for any positions?
> A: No.
> Q: Why not?
> A: I didn't find anything that would be any better for me than –
> Q: That you thought would be any better for your asthma?
> A: Right.

(Deposition of Victoria Albert, Vol. 1, at 25-26).

From this testimony, the Court reasonably infers that only openings available were checker/cashier and front end manager.

9. Shortly after she stopped working for Smith's, Plaintiff filed an administrative charge of discrimination alleging that Smith's had engaged in disability discrimination by not permanently transferring her to a different position following her leave.

## Issue Presented

Whether reasonable accommodation under the §28-1-7(J) NMSA 1978 (2000) (the New Mexico Human Rights Act, "NMHRA" herein) includes alternative job placement, that is, transfer or reassignment to a different job.

## Discussion

The NMHRA was enacted in 1969, 1969 N.M. Laws, ch. 196, §§ 1- 15, to eliminate unlawful discriminatory practices and to create a comprehensive administrative scheme to facilitate adjudication of claims of discrimination. Grandy v. Wal-Mart Stores, Inc., 117 N.M. 441, 442, 872 P.2d 859, 860 (1994). Subsection J was added to §28-1-7 in 1983, to specifically proscribe disability

discrimination. Pursuant to §28-1-7(J) NMSA 1978 (2000), it is unlawful for "any employer to refuse or fail to accommodate to an individual's physical or mental handicap or serious medical condition, unless such accommodation is unreasonable or an undue hardship."

Courts are required to give effect to the intent of the legislature, which is ascertained primarily from language used in the statute as a whole, giving the statute effect as written. State v. Wyrostek, 117 N.M. 514, 518, 873 P.2d 260, 264 (1994). The term "reasonable accommodation," however, is not defined in the NMHRA. Regulations adopted to carry out the provisions of a statute are a source of guidance in interpretation of the statute. Alexander v. Choate, 469 U.S. 287, 304-305 & note 24 (1985). In 1998, the New Mexico Department of Labor adopted regulations which define "reasonable accommodation" as:

> [S]uch modifications or adaptations of the work environment or job responsibilities of a handicapped person as are necessary to enable him or her to perform the essential functions of *the job in question* and which do not impose an undo hardship on the employer.

§9.1.1.7(FF) NMAC (2000) (emphasis added).

Plaintiff contends that the court should look to the Americans With Disabilities Act ("ADA" herein) in order to construe the scope of the term "reasonable accommodation" as used in the NMHRA. The New Mexico Supreme Court, while recognizing that federal law can be of help in analyzing claims made under the NMHRA, has cautioned that it is not a substitute for state law.

> In interpreting our state Human Rights Act, we have previously indicated that it is appropriate to rely upon federal civil rights adjudication for guidance in analyzing a claim under the Act, with the following reservation: Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own. Our analysis of this claim is based on New Mexico statute and our interpretation of our legislature's intent, and, by this opinion, we are not binding New Mexico law to interpretations made by the federal courts of the federal statute.

Gonzalez v. New Mexico Dep't of Health, 2000 - NMSC -029, 129 NM 586, 11 P.3d 550, 557 (2000), (citing Smith v. FDC Corp., 109 N.M. 514, 519, 787 P.2d 433, 438 (1990).

The ADA was enacted in 1990, in order to eliminate disability discrimination. See H. Rep. No. 101-485(II), at 22-23 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 304 ("The purpose of the ADA is to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities...."). The ADA and the regulations promulgated pursuant to it specifically include "reassignment to a vacant position" as a possible, though not necessarily required, type of reasonable accommodation. 42 U.S.C. §12111(9); 29 C.F.R. §1630.2(o)(2). The ADA definition of "qualified individual" is also broader than that found in the NM Labor Department regulation.[1] In promulgating its regulations, the NM Labor Department did not adopt the language utilized some eight years earlier in the ADA.

In an attempt to overcome this difference, Plaintiff argues that the court must look to how the Human Rights Commission interprets its regulations. To this end, she has filed the affidavit of Patrick Simpson, counsel for the Commission. In essence, Mr. Simpson's affidavit states (1) that in disability discrimination cases, the Human Rights Commission relies on federal guidance because of a lack of state authority, and (2) that although the Commission has never had the opportunity to address whether alternative job placement is considered an option for reasonable accommodation, it does consider favorably all efforts by employers to accommodate employee disabilities. He then opines "If efforts to accommodate an employee weigh against a finding of discriminatory intent, then

---

[1]The NM Labor Department Regulations define a "qualified handicapped person" as one who "with reasonable accommodation, can perform the essential functions *of the job in question* . . ." §9.1.1.7(CC) NMAC (2000) (emphasis added). 42 U.S.C. §12111(8) defines a "qualified individual with a disability as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position *that such individual holds or desires* . . ."

6

a failure to provide available, reasonable accommodation ought to weigh in favor of a finding of discriminatory intent."

On legal questions regarding the interpretation of the NMHRA or its implementing regulations, the court may afford some deference to the Human Rights Commission, particularly if the question at hand implicates agency expertise. See Johnson v. New Mexico Oil Conservation Commission, 127 N.M. 120, 123, 978 P.2d 327, 330 (N.M. 1999). However, Mr. Simpson's opinion of what the Commission might do in a matter never presented to it can in no way be considered relevant. In addition, "[T]he court may always substitute its interpretation of the law for that of the [Commission] 'because it is the function of courts to interpret the law.' " Fitzhugh v. New Mexico Dep't of Labor, 1996-NMSC-044, 22, 122 N.M. 173, 180, 922 P.2d 555, 562 (quoting Morningstar Water Users Ass'n v. New Mexico Pub. Util. Comm'n, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995)). The scope of "reasonable accommodation" required under the NMHRA is a legal determination. To the extent Mr. Simpson's affidavit seeks to establish the legal standard, it is neither competent nor admissible. Specht v. Jensen, 853 F.2d 805, 807-808 (10th Cir. 1988).

**Conclusion**

Giving effect to the language of the NMHRA, guided by the regulations adopted by the New Mexico Department of Labor in order to carry out the provisions of the NMHRA, "reasonable accommodation" does not encompass reassignment to a vacant position. Accordingly, I find that Defendant is entitled to Summary Judgment as a matter of law on Plaintiff's claim of a violation of the New Mexico Human Rights Act.

**Mitigation of Damages**

Plaintiff's Third Amended Complaint, filed September 19, 2001, added a claim for violation

7

of the ADA. (Docket No. 63). Defendant's Motion for Summary Judgment on the issue of mitigation of damages will be addressed in relation to this remaining claim.[2]

## Uncontroverted Facts

9. On July 18, 2001, Smith's offered Plaintiff reinstatement as a stocker at store 439. In the offer, Smith's explained that Plaintiff would be "paid at a rate of $14.00" and the "her seniority [would] be the same as if [she] never left the company." Smith's further explained that Plaintiff was free to accept its offer and pursue her lawsuit against Smith's without fear of retaliation.

10. Plaintiff testified at her deposition that her previous stocking experience at Smith's had been "great" and that she earned $13.30 an hour when she left Smith's.

Defendant asserts that is it uncontroverted that Plaintiff did not accept the job offer described in ¶9, supra. Plaintiff denies that she "did not accept" the offer, but does admit in additional "materials facts" that she had not accepted the offer by the date it was originally set to expire, July 24, 2001, or by the extended deadline on July 25, 2001. She goes on to assert that on July 26, 2001, when the parties were engaged in a settlement conference she indicated that she would be willing to accept the position offered by the Defendant as long as the offer was still unconditional, but that Defendant refused to extent the offer to the Plaintiff at that time, indicating that it would only reinstate the Plaintiff if she dismissed her lawsuit against Defendant.

## Issue Presented.

---

[2]Defendant's Motion for summary judgment on the issue of mitigation of damages, although framed in terms of the NMHRA, relied upon case law decided under Title VII and the ADA. Plaintiff's response did likewise.

The issue presented is: Whether Defendant's liability for back pay and front pay was tolled by its July 18, 2001, offer of reinstatement, which was not accepted by Plaintiff prior to its expiration date of July 25, 2001.

**Discussion**

"An ADA claimant must exercise reasonable efforts to mitigate his or her damages." Saladin v. Turner, 936 F.Supp. 1571, 1581 (N.D. Okla. 1996), citing Ford Motor Co. v. EEOC, 458 U.S. 219 (1982). A claimant in an employment discrimination case is obligated to minimize his damages by accepting the employer's unconditional offer of reinstatement to his previous job or a job that is substantially equivalent. Giandonato v.Sybron Corp., 804 F.2d 120, 124 (10th Cir. 1986). Only if "special circumstances" are present is the employee relieved of this obligation. Ford Motor Co. v. EEOC, 458 U.S. at 238-239, and note 27.

The employer bears the burden of proving it made an unconditional offer of reinstatement and that the plaintiff's rejection of it was objectively unreasonable. Saladin v. Turner, 936 F.Supp. 1571, 1582 (N.D. Okla. 1996) citing Smith v. World Ins. Co., 38 F.3d 1456, 1465 (8th Cir.1994). No conditions were placed on the July 18, 2001, offer. Plaintiff was offered a job she had sought, at greater pay than she was earning when she was terminated, with no requirement that she forego her pending suit against Defendant. (Undisputed Facts No. 9 & 10). Plaintiff failed to present any evidence that Defendant's offer was not a good faith offer. She thus failed to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Feidler v. Indianhead Truck Line, Inc., 670 F.2d 806, 809 (8th Cir. 182). Plaintiff's failure to accept this offer of reinstatement by the deadline presented is tantamount to a rejection of the offer. See Saladin v. Turner, 969 F.Supp. 1571, 1581 (Plaintiff's claims for back pay cut off as of date of expiration of offer of reinstatement).

9

Plaintiff's failure to accept the offer of reinstatement does not automatically result in tolling damages, however. "(T)he trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal." Giandonato v. Sybron Corp., 804 F.2d at 124, citing Taylor v. Teletype Corp., 648 F.2d 1129, 1139 (8th Cir. 1981), cert. denied 454 U.S. 969, 102 S. Ct. 515, 70 L. Ed2d 386 (1981).

Plaintiff has presented no "special circumstance" which would relieve her from her obligation of accepting the unconditional offer of employment.[3] The Affidavit of Attorney Kerri Peck (Docket No. 46) is the only evidence offered by Plaintiff. The Affidavit states that counsel for Plaintiff expressed to counsel for Defendant that the time period within which Plaintiff was to respond to the offer was "unreasonable." This is a conclusion, not a fact. No facts are presented as to why this time period, seven days, would be unreasonable.[4] The court recognizes that certain time constraints placed on an offer of reinstatement may make rejection of the offer reasonable. See e.g., Penco Enterprises, Inc., 216 N.L.R.B. 734, 734-35 (1975) ("one day at the most"); Southern Household Products Co., 203 N.L.R.B. 881, 882-83 (1973) (four days); Leprino Cheese Co., 170 N.L.R.B. 601, 607-08 (1968), enforced, 424 F.2d 184 (10th Cir.), cert. denied, 400 U.S. 915, 91 S.Ct. 173, 27 L.Ed.2d 154 (1970) (same day); Portage Plastics Co., 163 N.L.R.B. 753, 753 (thirty minutes). Seven days, however, is not an unreasonable time frame given the undisputed facts of this case. In addition, Plaintiff's actions on July 26, 2001, indicate that she considered the terms of the offer to be

---

[3]See. e.g., Ford Motor Co. v. EEOC, 458 U.S. at 238-239 and note 27( requirement that a claimant move a great distance to accept the offer of reinstatement could be considered a special circumstance); Saladin v.Turner, 969 F.Supp. at 1582 (evidence of pervasive hostility would be a special circumstance.)

[4]For example, if Plaintiff were away and not reachable by her counsel the reasonableness of the time period might be implicated.

10

reasonable. I conclude that no jury could find that Plaintiff's refusal of the offer of reinstatement was reasonable.

Finally, Plaintiff contends that she has not had the opportunity to depose Defendant's representatives to "explore the issue of whether Defendant made the offer (of reinstatement) in good faith." Defendant's Motion for Summary Judgment was filed on August 7, 2001. Discovery in this case was originally scheduled to terminate on September 4, 2001. (Docket No. 22). Plaintiff obtained an extension of time to complete discovery to September 30, 2001, limited however, to taking the depositions of her store director and district personnel manager, Dallon Clarkson and Kevin Slowey. (Docket No. 53). Plaintiff has presented the court with no additional testimony related to Defendant's offer of reinstatement.

## Conclusion

On the undisputed facts before me, I find that Defendant made an unconditional offer of reinstatement to Plaintiff; that the period of time within which the offer was extended was reasonable, and that Plaintiff presented no special circumstances which would relieve her of the obligation of accepting that offer. Accordingly, I find that Defendant is entitled to Summary Judgment as a matter of law on Plaintiff's claim for back and front pay accruing after July 26, 2001.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 38) is granted. Plaintiff's claims for relief pursuant to the New Mexico Human Rights Act are hereby dismissed. Plaintiff's claims for back and front pay accruing after July 25, 2001 are hereby dismissed.

                                              RICHARD L. PUGLISI
                                              United States Magistrate Judge
                                                 (sitting by designation)

Attorneys for Plaintiff:

   J. Douglas Foster, Esq.
   Kerri L. Peck, Esq.
Attorneys for Defendants:
   Thomas L. Stahl, Esq.
   Jocelyn C. Drennan, Esq.