FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUL 16 2004

VICTORIA ALBERT,

        Plaintiff,

CLERK

v.

No. CIV 01-266 RLP/LCS

SMITH'S FOOD & DRUG CENTERS, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendant Smith's Food and Drug Centers, Inc. ("Smith's") Motion for Summary Judgment on Punitive Damages, filed November 14, 2001.[1] [Doc. No. 83.] The Motion is fully briefed and the Court has carefully considered all of the pleadings, attachments, exhibits, and arguments presented by counsel. After thorough consideration of all of the pertinent pleadings and law, the Court grants Smith's Motion for Summary Judgment on Punitive Damages. Accordingly, the punitive damages claim as asserted in the Third Amended Complaint will be dismissed with prejudice.

---

[1] On January 31, 2002, the Court granted Smith's Motion for Summary Judgment on Plaintiff's ADA claim and dismissed the case, with prejudice. [Doc. Nos. 103, 104.] That ruling, in effect, mooted Smith's pending motion for summary judgment as to an award of punitive damages. Plaintiff Victoria Albert appealed the Court's ruling, and on January 29, 2004, the Tenth Circuit Court of Appeals affirmed the district court's opinion and reversed in part. [Doc. No. 127.] More specifically, the Tenth Circuit reversed the trial court's grant of summary judgment on the ADA claim and remanded for further proceedings. Jury selection and a trial in this case are now scheduled to begin on September 13, 2004. [Doc. No. 132.] Smith's Motion for Summary Judgment on Punitive Damages now must be decided in light of the reversal and remand.

1



## Background

The following facts, are taken from the parties' briefing and/or the Tenth Circuit's January 29, 2004 decision, and are undisputed for purposes of the motion for summary judgment. Plaintiff Victoria Albert ("Albert") worked for Smith's for about fourteen years. Since early childhood, she has had asthma that limited certain activities and/or her ability to breathe. She has been instructed by her physicians to avoid crowds, cigarette smoke, perfumes and outdoor activities. According to Albert, many materials may trigger an asthma attack and render her completely unable to function. The medications she has been prescribed have not been entirely effective.

While working as a cashier for Smith's, Albert began noticing that her asthmatic symptoms were worsening. She began to check Smith's job postings for alternative positions. Albert testified that in 1999 she was checking job openings at Smith's stores about once a week over a period of six months but she did not find any positions that she thought would be better for her asthma. [Doc. No. 86, Ex. 3, p. 26.] Using the on-line system, Albert applied for several positions in 1998 and 1999 but did not receive the positions. Both the positions at issue were given to individuals with more experience than Albert, and Albert does not claim any discrimination related to the selection of those persons for the jobs.

On August 28, 1999, Smith suffered an asthma flare up and left work. The next day, she went on a medical leave of absence that lasted until October 18, 1999. While out on medical leave, Albert advised Smith's personnel director that she was interested in a scanner or receiver position. According to Albert, the personnel director told her there were no such positions available then, but that she should not worry about it because they would work with her when she was released. Albert testified that she did not have any reason to believe that the personnel director was being untruthful

2

about what openings existed then. A scanner position did open while Albert was still out on leave, and it was offered to Albert. However, she had not been released to work yet, and the position had to be filled before Albert's return to work date. Albert testified that she had no reason not to believe the veracity of the scanning coordinator's statements that the scanner opening needed to be filled at that time. [Doc. No. 86, Ex. 3, pp. 147-48.]

Albert brought a note from her medical care provider, dated October 14, 1999, in which the physician prohibited her from working as a checker because of her asthma. Albert's employer told her, upon reading the restrictions, that she did not know what she was going to do with Albert but that they would find something for her. Albert returned to work on October 18, 1999. In response to the restrictions, Smith's temporarily placed Albert in a customer service booth position.

On about November 1, 1999, Albert was told there were no more hours available for her to work in customer service. She was permitted to work through November 5, 1999 in that area and during those three weeks, she apparently had no problem with her asthma. The store director gave her a description of the checker job duties and asked her to take the description to her physician to see if the doctor would sign off on it so that Albert could have that position back. According to Albert, she called her health care provider and discussed the job description; however, Albert said that her doctor told her she would not sign off on the position. Apparently, Albert never provided any type of written note to this effect to Smith's from her physician and did not actually fax or provide a paper copy of the job description to her doctor.

After November 5, 1999, Albert stopped working for Smith's and did not inquire about or attempt to apply for any openings at any Smith's store. Shortly after stopping her work at Smith's,

3

she filed an administrative charge of discrimination against Smith's and eventually pursued a lawsuit.

Evidence revealed that a scanner position at Smith's became available on December 10, 1999, more than a month after Albert had stopped working. According to Albert, six more scanner or receiver positions opened up between December 10 and February 25, 2000. Albert was not offered any of these positions. She was formally terminated on April 10, 2000.

After Smith filed a lawsuit in state court, the parties attempted to negotiate a settlement of the lawsuit. Smith's offered Albert reinstatement to a position that would accommodate her disabilities, in which she would receive higher pay and the same seniority she had in her prior positions. She was also free to pursue her litigation if she accepted the offer. The offer was open for six days, and Albert was given one additional day to consider the offer. She waited to accept the offer until a day after the expiration of the offer. At that time, Smith's refused to reinstate her unless she dropped her lawsuit. The attempted settlement failed. The Tenth Circuit, however, affirmed the trial court's decision that Smith had failed to mitigate her damages. Thus, even if successful on her ADA claim, her damages cease as of the date the offer expired – July 25, 2001.

### Punitive Damages

"An ADA plaintiff may seek punitive damages if [her] employer acted with 'malice or with reckless indifference to the plaintiff's federally protected rights.'" Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999) (applying § 1981(a) in a Title VII case) (emphasis and alterations omitted); *see also* Bartee v. Michelin North America, Inc., __ F.3d __, 2004 WL 1447976 at *4 (10th Cir. June 29, 2004) (applying Kolstad to ADA case) and EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1244 (10th Cir. 1999) (same). To satisfy this standard, there must be evidence demonstrating that the

4

employer engaged "in the prohibited conduct with the 'knowledge that it may be acting in violation of federal law, not [mere] awareness that it is engaging in discrimination.'" Kolstad, 527 U.S. at 535. This standard also has been articulated to require a showing that the employer "must at least discriminate in the face of a perceived risk that its actions will violate federal law." Id. at 536.

In Kolstad, the United States Supreme Court instructed that the terms "malice" and "reckless" focus on the actor's state of mind. Id. at 535. The Court also advised that there will be circumstances where intentional discrimination does not give rise to an award of punitive damages under the standard. In some instances where the employer discriminates, it may have done so with the distinct belief that its discrimination was lawful. Id. at 537. For example, an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability. Id.

Here, the Court has extensively reviewed the record and pleadings submitted by the parties and finds no evidence that Smith's acted with malice or reckless indifference with respect to Albert's federally protected rights, that it knowingly acted in violation of the ADA, or that it discriminated against Albert in the face of a perceived risk that its actions would violate federal law. Instead, there is undisputed evidence that Albert was permitted to go on medical leave due to her medical condition and that there were attempts to place her in a position she requested. However, at the time a position did become available, she had not been released to work. Moreover, evidence was presented that while Albert made both on-line and verbal inquiries about openings in Smith's stores she found no openings that were suitable for her condition. In addition, she was told by Smith's personnel that there were no openings, and she testified that she had no reason to doubt the veracity of this information.

Other undisputed evidence was presented that when Albert returned from her medical leave, she was placed by Smith's in a position to accommodate her restrictions, and that for a period of three weeks she had no problems with her asthma in that position. However, Smith's presented evidence that it had no more hours available for Albert to work in that area of the store, and there was no evidence presented to show otherwise. At that time, as of November 5, 1999, Smith's had no positions available that would accommodate Albert's medical restrictions. Albert does not dispute this information and has no reason to believe that Smith's provided her false information about the availability of positions that might accommodate her during this time frame.

After Albert stopped working on November 5, 1999, it is uncontested that she made no further inquiries with Smith's about other openings that might have come up subsequently and for which she could have performed with her restrictions or with accommodation. Instead, shortly after this date, she filed a charge of discrimination. There is evidence that on December 10, 1999, a position opened that Albert might have been able to fill. However, that position and other subsequent openings were not discussed with Albert, nor did she make any inquiries about available positions after she stopped working on November 5, 1999.

The law in this circuit is that a reasonable accommodation may include reassignment to a vacant position. Smith v. Midland Brake, Inc., 180 F.3d 1154, 1162 (10th Cir. 1999). A vacant position "includes not only positions that are at the moment vacant, but also includes positions that the employer reasonably anticipates will become vacant in the fairly immediate future." Id. at 1175. The employee must demonstrate that there was a vacant, funded position whose essential duties she could perform, with or without reasonable accommodation. Id. at 1162.

6

The right to reassignment is not absolute. An employer is required only to take reasonable steps, under the circumstances, to accomplish a reassignment. Id. at 1171. Considerations include whether the position was actually vacant, whether it was an equivalent or lesser position, and whether the reassignment might interfere with the rights of other employees or important business policies of the company. Id. at 1166. An employer is not required to create a position that does not exist in order to reassign an employee or to bump an existing employee from a job. Id. at 1169, 1174-75. In addition during the interactive process that requires both parties to participate in discussing an appropriate reasonable accommodation, the employee must convey to the employer a desire to remain with the company despite her limitations. Id. at 1172.

In this case, as of November 5, 1999, and throughout that month until December 10, 1999, there is no evidence to show there were vacant positions for which Albert could perform with her limitations and/or with accommodations. Similarly, there is no evidence that Smith's anticipated the opening that occurred on December 10, 1999, or that it was obligated to inform Albert of that position after she had made no additional inquiries about working at Smith's after November 5, 1999.

The Court concludes here, based on the evidence presented, that there are no genuine issues of material fact to defeat Smith's motion for summary judgment on Albert's claim for punitive damages. There simply is no evidence of malice or reckless indifference on the part of Smith's. While the Tenth Circuit found factual issues in dispute as to who ended the interactive process or when it was terminated, there is no question that Smith's engaged in the interactive process with Albert and that it accommodated her for a period of time when it had a position available for her.

Moreover, even if a jury were to conclude that Smith's intentionally discriminated against Albert, there is no evidence presented to support a claim of punitive damages under the facts of this case.

In sum, the Court finds no evidence showing that Smith's had knowledge that it was acting in violation of federal law or even awareness that it might be engaging in discrimination. Here, Smith's did not ignore or disregard Albert's requests for accommodation: it simply could not find an available position.

In addition, the fact that a possible position opened up more than a month after Albert stopped working at Smith's is not evidence of maliciousness or reckless indifference on Smith's part. This is true because that position was not available at the pertinent times in November and there is no evidence that Smith's anticipated that opening would occur in the near future. If anything, the evidence shows that Smith's was attempting to follow the law in its attempts to accommodate Albert's restrictions.

## Conclusion

Because the Court concludes that there are no genuine issues of material fact for a jury to decide with respect to Plaintiff's claim for punitive damages, summary judgment will be granted to Defendant on this claim, and it will be dismissed with prejudice.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment on Punitive Damages [Doc. No. 83] is GRANTED and that the punitive damages claim is dismissed with prejudice.

Richard L. Puglisi
United States Magistrate Judge