IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VICTORIA ALBERT,

        Plaintiff,

v.                                                     No. CIV 01-266 RLP/LCS

SMITH'S FOOD & DRUG CENTERS, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Plaintiff Victoria Albert's "("Albert's) Motion in Limine, filed August 30, 2004. [Doc. No. 144.] Defendant Smith's Food & Drug Centers, Inc. ("Smith's") submitted its response on September 7, 2004. [Doc. No. 164.] After careful consideration of the pleadings and the pertinent law, the Court determines that Plaintiff's motion should be granted in part and denied in part.

### Background

On January 29, 2004, the Tenth Circuit Court of Appeals reversed this court's grant of summary judgment to Smith's on Albert's Americans with Disabilities Act ("ADA") claim. The case now proceeds to trial on Albert's sole claim of ADA discrimination.

### Albert's Motion in Limine

Albert anticipates that Defendant Smith's Food & Drug Centers, Inc. ("Smith's") will offer the testimony of Ian Adams ("Adams") at trial regarding a position statement to the EEOC that he

1

signed on behalf of Smith's and also the expert testimony of Dr. Denece Kesler ("Dr. Kesler") regarding her opinion as to whether Albert's asthma prevented her from working as a cashier and whether there was objective evidence demonstrating that her asthma worsened after working as a cashier. Albert's motion seeks to exclude both witnesses from testifying and asks generally that Smith's be directed not to offer hearsay evidence through any of its witnesses without first alerting the Court and plaintiff's counsel of her intent to do so outside the presence of the jury.

Smith's responds that Adams should be permitted to testify about why he signed the position statement and what he believed at the time he signed it. Smith's argues further the position statement should not be admitted into evidence if the Court prevents Adams from testifying.

With respect to Dr. Kesler's testimony, Smith's asserts that Albert missed the deadline to file a <u>Daubert</u> motion.[1] In addition, Smith's contends that Dr. Kesler satisfies all the requirements of Fed. R. Evid. 702 and that she should be permitted to provide her expert opinions.

Finally, Smith's argues that the miscellaneous hearsay objections should be overruled and that a blanket order requiring defense counsel to alert the Court about anticipated hearsay in advance of such testimony is "unworkable and unfair."

<u>**Analysis**</u>

**I.**     **<u>Ian Adam's Testimony and EEOC Position Statement</u>**

The Court will permit the EEOC position statement,[2] signed by Adams, to be admitted into evidence as an admission by a party-opponent under Fed. R. Evid. 801(d)(2). Assuming that Smith's

---

[1] The Court elects to decide the <u>Daubert</u> motion despite the fact that Albert missed the deadline for filing a <u>Daubert</u> motion.

[2] The EEOC position statement is listed as one of Albert's proposed contested exhibits. [Doc. No. 154.]

can lay the proper foundation, the Court will allow Adams to testify about any personal knowledge he has of the contents of the position statement, whether there is a misstatement in the document, and why he signed the statement.

The Court observes, however, through deposition testimony of Adams (attached as Ex. 2 to Plaintiff's Motion in Limine), that Adams himself did not investigate the EEOC charge or draft the statement. Adams also testified that he did not recall if he asked any specific questions of the paralegal who drafted the statement regarding the contents of the position statement and that he was "guessing" how the paralegal conducted her investigation and put together the position statement. In addition, Adams stated that "apparently" on December 10, 1999, a position had opened at Smith's even though the position statement informed the EEOC that no positions had become available during that time frame. Adams testified that he was not sure when he became aware of the job opening but "certainly during the course of this litigation."

The Court advises Smith's that Adams will not be permitted to testify about his speculation as to how the paralegal prepared this position statement, conducted her investigation as to this charge, or why she stated in the document that there were no positions available in the pertinent time frame. In addition, if a proper foundation cannot be laid as to when Adams learned that there was a misstatement in the position statement or a job opening on December 10, he will not be permitted to provide testimony that is nothing more than conjecture. Adams will only be permitted to testify about personal knowledge that he has about the contents of the document, who prepared it, what he did to review the position statement and why he signed it.

Thus, the Court grants the motion in limine to the extent that Adams will not be permitted to present speculative testimony, but denies it in that Adams will be permitted to testify about his

personal knowledge concerning the document. The Court's ruling that the position statement will be admitted into evidence does not mean that the parties may discuss or admit the EEOC charge and/or the outcome of that administrative process.

## II.     Dr. Kesler's Expert Opinion

### A.     *Legal Standard*

Federal Rule of Evidence 702 governs admissibility of expert testimony. That rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opnion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" Goebel v. Denver and Rio Grande Western Railroad Co., 346 F.3d 987, 991 (10th Cir. 2003) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)). The district court is to "assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts." Id.

The expert's opinion must have a reliable basis in the knowledge and experience of the pertinent discipline. Id. To assess such reliability, the trial court may consider:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards

>controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

Id. at 991-92.

In order to properly perform its gatekeeping function, the Court must make detailed findings on the record as to the reliability of the expert's proposed testimony and "adequately demonstrate [s] by *specific findings on the record* that it has performed its duty as gatekeeper." Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir.), *cert. denied,* 124 S.Ct. 533 (2003) (emphasis in original).

It is within trial court's discretion how to perform its gatekeeping function under Daubert. *See* Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). While the most common method for fulfilling the gatekeeping role is to conduct a hearing, that process is not specifically mandated. United States v. Call, 129 F.3d 1402, 1405 (10th Cir. 1997), *cert. denied,* 524 U.S. 906 (1998). Here, the Court determines that it can reach a conclusion as to the testimony of Dr. Kesler based on the briefing and attachments.

### B.     *Dr. Kesler's Qualifications and Proposed Opinions*

Dr. Kesler is the Medical Director of the occupational health clinics for both the University of New Mexico and the University's hospital. She testified at her deposition that she sees about one asthma patient in a year. In reaching her opinions, Dr. Kesler reviewed Albert's medical records from Lovelace, a condensed transcription of Albert's deposition, the exhibits attached to the deposition, and she made a work site visit of the Smith's store at issue.

Smith's explains that Dr. Kesler intends to offer two main opinions: (1) that the note dated October 14, 1999 that Albert presented prior to her return to work (from Albert's health care provider restricting Albert's work activities) was not specific enough for Smith's to determine

whether Albert was physically qualified to work as a cashier; and (2) that there is insufficient evidence in Albert's Lovelace medical chart to conclude that working as a checker worsened Albert's asthma.

Dr. Kesler's expert report (attached as Ex. 4 to Plaintiff's Motion in Limine) states there is insufficient objective evidence documented to indicate that the cashier position caused exacerbation of Albert's asthma and further that the medical notes do not document any specific subjective complaints by Albert to the medical care provider that the work place caused Albert asthma symptoms. Dr. Kesler also opines in her report that there is no documentation of a complete environmental history in the medical records from Albert's office visits. In addition, Dr. Kesler's report states that while there are several methods of data collection used to objectively analyze whether or not there is a possible association of asthma complaints with a specific environment, none of these methods were used. Thus, according to Dr. Kesler, the "persistent lack of subjective complaints related to the work place and the lack of objective data regarding symptoms at the work place would bring into question the usefulness of restrictions that are not indicated." Further, Dr. Kesler challenges statements made by Albert in her deposition that Dr. Kesler concludes are not supported by objective evidence.

Albert first challenges Dr. Kesler's qualifications since she sees only one asthma patient each year. While the Court finds this type of experience somewhat problematic in a case involving an alleged disability of asthma, it appears that Dr. Kesler has the requisite experience to read medical records and offer opinions on those records. However, the key inquiry in this case is whether Dr. Kesler's proposed opinions would "assist the trier of fact to understand the evidence or to determine a fact in issue." Here, the Court determines that Dr. Kesler's proposed testimony should be excluded primarily because it would not assist the trier of fact to understand a fact in issue.

The trier of fact is capable of assessing for itself the clarity of the restrictions contained in the Albert's October 14 medical provider note and in determining whether there is subjective and objective evidence that Albert's asthma was exacerbated by her work as a cashier or checker. In other words, the jury can read and determine for itself what the medical records in this case say. Moreover, with respect to Dr. Kesler's first proposed opinion, she is not qualified to testify what Smith's could understand from the October 14 note and whether the restrictions were sufficiently clear for Smith's to determine what work Albert could do. This Court does not find that the jury will be confused or misled by the medical records at issue or the medical note, and determines that the proposed expert testimony would not be helpful to the finder of fact. *See* Fed. R. Evid. 702.

Moreover, based on the expert report, it appears that Dr. Kesler intends to comment on Albert's credibility during her deposition since Dr. Kesler opines that there is no objective evidence to support Albert's subjective complaints. Expert testimony that vouches for the credibility of a witness encroaches upon the jury's vital role to make credibility determinations and does not assist the trier of fact as required by Rule 702. *See* <u>United States v. Charley</u>, 189 F.3d 1251, 1267 (10th Cir. 1999) (citing Fed. R. Evid. 702), *cert. denied,* 528 U.S. 1098 (2000).

Smith's argues that it is reasonable for a medical expert in a non-standard of care case to offer an opinion based on the contents of the medical record. While this may be true, the Court determines that Dr. Kesler's proposed opinions are not reliable. She appears to reach conclusions, more akin to speculation, that Albert's asthma was not related to her checking/cashier work because there are few if any notations of subjective complaints in the medical records. Assuming Albert may have complained to the medical care provider about her work affecting her asthma, there could be a number of reasons why notations in the medical records might not have been made.

7

In any event, defense counsel and the witnesses can present argument and evidence, to the extent it exists, identifying the records that fail to contain subjective complaints by Albert and the general lack of objective evidence that Albert was affected negatively by her work position at Smith's. In addition, Smith's can present testimony as to what it understood by the October 14 note containing medical restrictions. For all of these reasons, the Court will grant Albert's Motion in Limine with respect to Dr. Kesler's proposed testimony and preclude her from providing expert testimony at trial.

### III. Miscellaneous Hearsay Objections

The Court denies Albert's request that defense counsel alert the Court and plaintiff's counsel in advance prior to eliciting any hearsay testimony from a witness. However, both parties are advised that they are not permitted to elicit hearsay testimony from a witness unless the testimony falls within an exception to hearsay. Any other miscellaneous testimony or documents identified as hearsay by Albert in her motion in limine will be addressed at trial.

IT IS THEREFORE ORDERED that Plaintiff's Motion in Limine [Doc. 144], is GRANTED in part and DENIED in part, as explained herein.

_____
Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)